# IN THE UNITED STATES DISTRICT COURT
# FOR THE MIDDLE DISTRICT OF GEORGIA
# VALDOSTA DIVISION

| | | |
|---|---|---|
| BENJAMIN WRIGHT, | * | |
| Petitioner, | * | CASE NO. 7:06-CV-68 HL |
| v. | * | 28 U.S.C. § 2255 |
| | * | CASE NO. 7:03-CR-21 HL |
| UNITED STATES OF AMERICA, | * | |
| Respondent. | * | |

## REPORT AND RECOMMENDATION

Petitioner Wright was charged in a two Count Indictment returned in this court on July 18, 2003, with Possession With Intent to Distribute More Than 5 Grams of Cocaine Base in violation of 21 U.S.C. § 841(a)(1) and (b)(1)(B)(iii) in Count One, and in Count Two with Possession With Intent to Distribute More Than 50 Grams of Cocaine Base in violation of 21 U.S.C. § 841(a)(1) and (b)(1)(A)(iii). (R-1) Petitioner entered into a Plea Agreement with the Government (R-44) and pled guilty to Count One of the Indictment. He was sentenced on April 22, 2004, to a term of 210 months imprisonment. (R-49, 52) He appealed his sentence to the United States Court of Appeals for the Eleventh Circuit which denied the same on October 13, 2004, as prohibited by a valid appeal waiver contained in the Plea Agreement. (R-58) Petitioner Wright did not seek *writ of certiorari* from the United States Supreme Court. His sentence, therefore, became final upon the expiration of 90 days after the decision of the the United States Court of Appeals for the Eleventh Circuit, to wit., on January 11, 2005. *See Clay v. United States,* 537 U.S. 522 (2003).

On April 21, 2005, Petitioner Wright filed his original Motion To Vacate, Set Aside, or Correct his Sentence Pursuant to 28 U.S.C.§ 2255 (R-59), which was denied by the District Court on December 7, 2005 (R-69). On June 22, 2006, the United States Court of Appeals for the Eleventh Circuit entertained Wright's application to file a second or successive § 2255 motion on his assertion that his federal sentence was enhanced under the Sentencing Guidelines as a result of two state court convictions that had since been overturned. On that basis, the Court granted Wright leave to file a second or successive § 2255 motion. (R-84) On July 27, 2006, Petitioner Wright filed his authorized second and successive Motion To Vacate, Set Aside, or Correct his Sentence Pursuant to 28 U.S.C.§ 2255. (R-87)

Petitioner Wright pleads in his second § 2255 Motion that:

> The prior convictions used to enhance Petitioner to career offender status is unconstitutional and cannot be relied upon to sustain the career offender; and . . .
>
> The issues contained in the grounds for relief were previously presented in the initial § 2255 motion but were rejected for lack of proof that the state court convictions were vacated. The state convictions are now vacated.

(R-87 at 3, 6) Petitioner also pleads that his first § 2255 motion was denied on January 10, 2006, and attaches to his second motion as Exhibits B and C copies of the Orders of the State Superior Court vacating the two state convictions at issue on May 1, and May 5, 2006, which was six months after the dismissal of Petitioner's original § 2255 motion. The Government filed its Response to Petitioner's second § 2255 motion asserting that Petitioner's motion was

2

time-barred for lack of due diligence on his part in obtaining the vacatur of the state sentences in Tift Superior Court in Case Nos. 95CR371 and 95CR194. The Government's Response (R-90) also showed that Petitioner Wright had been sentenced by the federal court on April 28, 2004 (R-52), and did not file his Motion to Withdraw Guilty Plea in each of the above referenced state convictions until March 3, 2006, and April 27, 2006, respectively (R-90, Exh. A and B), periods of more than 22 and 24 months after receiving his federal sentence enhanced by those state convictions.

The sole issue before this court is whether Petitioner acted with due diligence under the law in obtaining the vacatur of his underlying predicate state sentences to overcome the period of limitations otherwise imposed by 28 U.S.C. § 2255.

The United States Supreme Court in *Johnson v. United States,* 125 S.Ct. 1571 (2005), held that:

> In a case in which a prisoner collaterally attacks his federal sentence on the ground that a state conviction used to enhance that sentence has since been vacated, § 2255, ¶ 6(4)'s one-year limitations period begins to run when the petitioner receives notice of the order vacating the prior conviction, *provided that he has sought it with due diligence in state court after entry of judgment in the federal case* in which the sentence was enhanced.

*Id.,* at pages 1577-82. (emphasis added.) The Supreme Court's 2005 *Johnson* ruling requires that upon receiving a federal sentence, enhanced by prior state convictions, the petitioner must exercise due diligence to obtain vacatur of the state sentence or sentences used in order to collaterally attack his enhanced federal sentence. "After the entry of

3

judgment, the § 2255 claim's subject has come into being, the significance of inaction is clear, and very little litigation can be wasted, . . . Thus, from the date of the District Court entered judgment in his federal case, Johnson was obliged to act diligently to obtain the state-court order vacating his predicate conviction." *Id.* at 1574. The United States Court of Appeals for the Eleventh Circuit in *Rivers v. United States,* 416 F.3d 1319, 1322-23 (11th Cir. 2005), added a caveat to *Johnson*, stating:

> [T]he individualized, factual nature of a due diligence determination will indeed often require *Johnson* cases to be remanded for factual development. . . . *See Aron v. United States,* 291 F.3d 708, 712 (11th Cir. 2002)(explaining that "the due diligence inquiry is an individualized one that must take into account the [habeas petitioner's] conditions of confinement").

While Petitioner Wright proceeded *pro se* in his § 2255 actions, he was represented by counsel in his state efforts to obtain vacatur of his predicate state convictions. Petitioner Wright contends in his Reply Brief (R-92) that his attorney's delay in filing Motions To Vacate his state court sentences merited an evidentiary hearing on the issue of petitioner's individualized due diligence pursuant to 28 U.S.C. § 2255, ¶ 6(4). An evidentiary hearing was held on May 8, 2007, pursuant to Rule 8 of the Rules Governing Section 2255 Proceedings, for the determination of the issue of Petitioner's due diligence pursuant to 28 U.S.C. § 2255, ¶ 6(4). *See* Transcript, R-99.

The salient protions of the evidentiary hearing are as follows:

> Attorney Herbert Benson testified that his client, Richard Golden, contacted him probably in June of 2004 in regard to seeing "what information or research [Benson] could do to see if there was some way to get [Wright's] sentence reduced.

4

(R-99 at 7, 14) The hearing also revealed that Attorney Benson did not file the Motions To Withdraw Petitioner's Guilty Plea in the two state convictions in question until March 3, 2006, and April 27, 2006 (R-99 at 25), and that the judge of Tift Superior Court issued orders vacating those convictions in May of 2006 (R-99 at 31). The record, therefore, reflects that, from the date of Petitioner's federal sentence on April 22, 2004, until the first state action to vacate his predicate state sentences was filed on March 3, 2006, a period of more than 22 months had elapsed. The elapsed time between Petitioner's federal sentencing and the actual vacatur of the state sentences was more than 24 months.

The testimony of Petitioner Wright reveals a very detached involvement with the vacatur process and no cognizance or concern with due diligence in obtaining the same. He first testified that, indeed, he was sentenced in this court on April 22, 2004, and that his attorney, Mr. King, filed a direct appeal on his behalf; that he arrived in Federal prison on August 5, 2004, during the pendency of his appeal; and that he realized that he could attack his sentence "[o]nce [he] waited on the direct appeal." (R-99 at 58, 59) Petitioner was asked:

> Q [W]hen did you realize, after your sentence and your conviction had been affirmed, that you could attack your sentence and conviction in another way?
>
> A Oh, I had got to the prison and got with a law clerk inmate, and [he] looked over my paper work and told me what needed to be done.

(R-99 at 59) Petitioner Wright added that after the inmate told him that "(career offender) was gonna be a hard road to fight there," he contacted Richard Golden and asked could he hire him an attorney to fight those issues. (R-99 at 60) Wright was equivocal at best in

5

stating when he contacted Golden. Petitioner Wright was asked:

> Q  Now, Mr. Benson may not have known, but you realized that you had a due diligence requirement, did you not?
>
> A  No, I didn't know that I had a due diligence requirement from actually the time, because I was new in the Federal system and I didn't understand a lot of things. . . . I never knew the due diligence requirement until after the order showed that what takes place.[1] It's just that I knew that I had a year to raise my issues under a 2255 from the AEDPA, some kind of, the anti-terrorist date. You know, they give you a year after your date.

(R-99 at 61, 62) His attorney posited to him that at some point he realized that he had a due diligence requirement, to which Petitioner Wright indicated that he did. His attorney then asked if he had discussed that with Mr. Benson, and Petitioner answered:

> A  No, I never discussed the due diligence part. I only explained far as that you got a year to raise your issues. And after I started talking to him, I told him I only have a year to appeal my sentence. And that if he some kind of way could challenge my prior convictions, and that if he could I actually needed it before a 2255 was filed so I can, you know, have all the evidence right there.

(R-99 at 62) Wright's hearing attorney pointed out that Petitioner Wright had filed a 2255 motion in April of 2005, which of course was before Attorney Benson ever filed the state motions to vacate Petitioner's predicate state convictions in 2006. Petitioner's hearing attorney then asked:

> Q  Did you ever ask Mr. Benson what was taking so long on the State Court conviction process?

---

[1] The *order* referenced was never identified.

> A  No, I never really questioned him. I just let him did his work. 'Cause I didn't know it was a due diligence required right there.

(R-99 at 63)   Petitioner Wright further testified at the hearing as follows:

> During the direct appeal, I was waiting, before I started pursuing my 2255, I was waiting on the attorney Mr. Benson to see, I mean Mr. Chevene King, to see what the outcome was going to be on the direct appeal. . . .  And on the direct appeal, which Mr. Chevene King put in, you know, I had to wait until I could see actually what the outcome with that was before I could actually start pursuing my 2255.

(R-99 at 68)   In *Johnson,* 125 S.Ct. at 1582,  Justice Souter, writing for the Court, stated:

> We . . . apply the fourth paragraph in the situation before us by holding that from . . . the date the District Court entered judgment in his federal case, Johnson *was obliged to act diligently* to obtain the state-court order vacating his predicate conviction.

(emphasis added.)  The Supreme Court's 2005 *Johnson* ruling requires that upon receiving a federal sentence, enhanced by prior state convictions, the petitioner must exercise due diligence from that date to obtain vacatur of the State sentence or sentences used in order to collaterally attack his sentence.  The Supreme Court held that Johnson had not exercised the *due diligence* required in § 2255, ¶ 6(4) in seeking State habeas review of his predicate sentence and denied relief.

Petitioner Wright is in exactly the same posture as Johnson.  Wright's present Motion presents the sole issue of whether he acted with *due diligence* in seeking an order vacating his predicate  State convictions used to enhance his federal sentence which triggered the renewal of his one-year limitations period under § 2255, ¶ 6(4).  The *Johnson* Court made

7

no provision for waiting until a direct appeal had been exhausted and the sentence finalized before Petitioner was required to challenge the predicate state sentences used to enhance his federal sentence. The *Johnson* Court stated clearly that:

> The particular time when the course of the later federal prosecution shows clearly shows that diligence is in order is the date of judgment. After the entry of judgment, the 2255 claim's subject has come into being, the significance of inaction is clear, and very little litigation would be wasted . . . Thus, from the date the District Court entered judgment in his federal case, Johnson was obliged to act diligently to obtain the state-court order vacating his predicate conviction. Had he done so, the 1-year limitations period would have run from the date he received notice of that vacatur.

*Johnson,* 125 S.Ct. at 1574. The 21 month delay in Johnson's case is perfectly analogous to the 22-24 month delay in Petitioner Wright's case. Petitioner Wright has not demonstrated due diligence in keeping abreast of the progress of his intended state action to vacate his predicate state convictions. He admittedly did not request that the attorney, who was apparently hired to challenge the state convictions, proceed with diligence. Wright's tacit claim that the attorney hired by his associate to inquire into the possibilities of vacating the state convictions was the cause of the delay and should not be attributed to him is not supported by law. For analogous cases, *see Diaz v. Sec'y for Dep't of Corr.,* 362 F.3d 698, 700-701 (11th Cir. 2004), citing *Sandvik v. United States,* 177D.3d 1269 (11th Cir. 1999) (holding that attorney negligence will not warrant equitable tolling); *Steed v. Head,* 219 F.3d 1298 (11th Cir. 2000) (holding that attorney's miscalculation of the limitations period or mistake could not be the basis for equitable tolling); *Helton v. Sec'y for Dep't of Corr.,* 259

8

F.3d 1310, 1312 (rejecting Petitioner's reliance upon counsel's mistaken calculation of limitations period because Petitioner did no show due diligence in ascertaining the correct period); and *Johnson v. United States,* 340 F.3d 1219 (11th Cir. 2003) (holding that Petitioner's inaction during the year after his conviction as affirmed on direct appeal did not justify equitable tolling).

Petitioner Wright also makes a veiled claim that he should have been warned of the significance of due diligence in meeting his limitations period in his authorized successive motion pursuant to § 2255. In *Outler v. United States,* 485 F.3d 1273, 1283 (11th Cir. 2007), the Court stated:

> [N]o case has ever held that a *pro se* litigant should be given actual notice of a statute of limitations. . . . Rather, *pro se* litigants, **like all others**, are deemed to know of the one-year statute of limitations. Indeed, any such requirement of actual notice would virtually eviscerate the statute of limitations. Thus, the law does not require a court, *sua sponte,* to remind a *pro se* litigant that he has only one year to file his claim.

Under *Johnson v. United States,* 544 U.S. at 298, 125 S.Ct. at 1575, Petitioner Wright could have filed a § 2255 motion up to one year from the date on which he received notice of the orders vacating predicate state convictions, but only if he exercised due diligence in seeking to overturn his prior convictions. He has not shown that he exercised due diligence in the matter, and the 22- 24 month delay between his sentence and the motions for the vacatur of his state sentences is found to have been avoidable with due diligence, thus, barring his present Motion To Vacate, Set Aside, or Correct his Sentence Pursuant to 28 U.S.C.§ 2255.

9

**WHEREFORE, IT IS RECOMMENDED** that Petitioner's Motion To Vacate, Set Aside, or Correct his Sentence Pursuant to 28 U.S.C.§ 2255 be DENIED. Pursuant to 28 U.S.C. § 636 (b)(1), Petitioner may serve and file written objections to this Recommendation with the UNITED STATES DISTRICT JUDGE, WITHIN TEN (10) DAYS after being served with a copy hereof.

**SO RECOMMENDED** this 1st day of August 2007.

                                                                       S/ G. MALLON FAIRCLOTH
                                                                       UNITED STATES MAGISTRATE JUDGE